| | | |
|---|---|---|
| **MORAN FAMILY OF BRANDS, INC. and** | ) | |
| **MORAN INDUSTRIES, INC.** | ) | **United States District Court** |
| | ) | **Northern District of Illinois** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **RONALD WEISS** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, Moran Family of Brands, Inc. ("**MFB**") and Moran Industries, Inc. ("**MI**") (collectively referred to as "**Plaintiffs**"), by and through its attorneys, Fisher Zucker, LLC, brings this Complaint against defendant, Ronald Weiss ("**Weiss**" or "**Defendant**"), and alleges as follows:

### NATURE OF THE ACTION

1. This action arises from Defendant's continued and ongoing breach of a franchise agreement entered into with MFB on February 15, 2005 (the "**Franchise Agreement**"), in addition to a co-branding addendum entered into that day and ongoing infringement of MI's federally registered trademarks, following termination of the Franchise Agreement.

2. After operating a Mr. Transmission franchise (the "**Franchised Business**") for nearly two decades, Defendant filed for bankruptcy protection, rejected the Franchise Agreement in those proceedings and thereafter began operating a competing transmission repair business under the name, "Ability Transmission." (the "**Infringing Business**").

3. Despite termination of the Franchise Agreement and Plaintiffs' written demand that he cease doing so, Defendant continues to operate the Infringing Business and continues to use MI's trademarks and branding in online listings, advertising, and digital media associated with the

Infringing Business. Defendant's unauthorized use of Plaintiff's marks is likely to cause confusion among consumers and falsely suggests that Defendant remains affiliated with or authorized by the Plaintiffs' franchise system.

4.      Defendant's conduct constitutes trademark infringement and false designation of origin in violation of the Lanham Act, breaches the covenant not to compete contained in the Franchise Agreement, and misappropriates Plaintiff's confidential and proprietary business information.

5.      Defendant's actions threaten the goodwill associated with Plaintiff's trademarks and franchise system and are causing immediate and irreparable harm to Plaintiff.

6.      Accordingly, Plaintiff seeks injunctive relief, damages, attorney's fees and all other remedies available under federal and state law.

## THE PARTIES

7.      Plaintiff, Moran Family of Brands, Inc. is an Illinois corporation with a principal place of business at 11524 West 183 Road Place, Suite 100, Orland Park, Illinois 60467.

8.      Plaintiff, Moran Industries, Inc., is an Illinois corporation with a principal place of business at 4444 W. 147th Street, Midlothian, Illinois 60445.

9.      Defendant, Ronald Weiss, is an individual residing in Texas, who operates a transmission repair business under the name Ability Transmission in Pasadena, Texas.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 because Plaintiff asserts claims arising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Franchise Agreement contains a forum selection clause requiring that disputes arising from the Franchise Agreement be litigated in the United States District Court for the Northern District of Illinois or the courts of Cook County, Illinois.

13. Defendant expressly agreed and consented to jurisdiction and venue in this Court in Section 34 of the Franchise Agreement.

## THE MR. TRANSMISSION FRANCHISE SYSTEM

14. MFB and its predecessors have operated transmission repair centers since 1962 and have franchised such centers since 1970, establishing substantial goodwill in the Mr. Transmission name.

15. MI is the intellectual property holding company that is the owner of various Mr. Transmission and Milex trademarks including, but not limited to (collectively, the "**Marks**"):

| Trademark | Registration No. | Registration Date |
|---|---|---|
| | 905,688 | January 5, 1971 |
| MR. TRANSMISSION | 917,866 | August 3, 1971 |
| MILEX | 1,602,864 | June 19, 1990 |
| | 2,726,414 | June 17, 2003 |
| | 2,829,274 | April 6, 2004 |

3

| | | |
|---|---|---|
| Milex COMPLETE AUTO CARE | 3,342,125 | November 20, 2007 |
| MILEX COMPLETE AUTO CARE | 4,663,306 | December 30, 2014 |

16.     MI licenses franchisees to operate transmission service centers using its Marks, trade dress, operating system, and confidential operations manuals (collectively the "**System**").

17.     The System includes confidential business methods, operational standards, marketing strategies, training materials, and customer service practices developed by MFB.

18.     Plaintiffs' Marks, proprietary information and the System constitute valuable intellectual property.

## THE FRANCHISE AGREEMENT

19.     On or about February 15, 2005, Defendant entered into the Franchise Agreement with Moran. A true and accurate copy of the Franchise Agreement is attached hereto as Exhibit A.

20.     Further, on February 15, 2005, Defendant entered into a Co-Branding Franchise Addendum (the "**Addendum**") which granted him the right to use the Milex Tune Up and Brakes trademarks. A true and accurate copy of the Addendum is attached hereto as Exhibit B.

21.     Pursuant to the Franchise Agreement, Defendant was granted the right and undertook the obligation to operate a Mr. Transmission service center in Houston, Texas (the "**Franchised Business**") for a twenty (20) year period (the "**Initial Term**").

22.     At the expiration of the Initial Term on February 15, 2025, the Franchise Agreement automatically renewed for one additional twenty (20) year period. Exhibit A at § 3.

4

23.     The Franchise Agreement and Addendum impose numerous contractual obligations on Defendant, including obligations relating to the use and protection of Moran's Marks, confidential information, and post-termination obligations.

24.     The Franchise Agreement expressly recognizes Plaintiff's ownership of the Marks. Specifically, Section 7 provides,

> "FRANCHISEE hereby acknowledges the validity of the proprietary mark 'MR. TRANSMISSION,' and also acknowledges that it is the property of FRANCHISOR…FRANCHISEE recognizes that the use by him of the proprietary mark, or any other mark or name that incorporates the words "MR. TRANSMISSION," inures to the benefit of FRANCHISOR, and that any goodwill arising from such use by FRANCHISEE belongs to FRANCHISOR and shall revert to FRANCHISOR in the event that this Agreement is terminated for any reason."

Exhibit A at §7.

25.     The Franchise Agreement also imposes strict confidentiality obligations. Section 20, states that the franchised System includes "confidential information, manuals, trade secrets, Trans Plus Management (TPM) Software, intranet access and procedures," and provides that Defendant "specifically acknowledges that the operating manual is the property of the FRANCHISOR" and that Defendant has no right to disclose or use that information except as authorized under the Agreement. Section 20 further requires Defendant, upon expiration or termination, to "return to FRANCHISOR the operating manuals" and prohibits disclosure of confidential information after termination. Ex. A at § 20.

26.     The Franchise Agreement and Addendum further impose extensive post-termination obligations designed to protect Plaintiff's intellectual property and franchise System. Section 23 of the Franchise Agreement provides in relevant part:

> "As long as the Agreement shall be in effect, and for a period of two (2) years thereafter, the FRANCHISEE shall not, directly or indirectly, engage or be financially interested in, or associated with, or invest in, the ownership or operation of any shop, center, or business

5

located in the licensed premises or within a radius of twenty-five (25) miles from the licenses premises or any other MR. TRANSMISSION SERVICE CENTER…"

Exhibit A at § 23 and Exhibit B at § 9.

27.    Importantly, the Franchise Agreement contains a detailed termination provision, which states:

"Upon termination or expiration of this Agreement, Franchisee shall immediately discontinue use of the Proprietary Marks and any confusingly similar names, marks, or symbols and shall cease holding itself out as a franchisee of Franchisor."

Exhibit A at § 25(a) and Exhibit B at § 11(B).

28.    Defendant agreed to each of these provisions when entering into the Franchise Agreement and Addendum.

## DEFENDANT'S BANKRUPTCY AND REJECTION OF THE FRANCHISE AGREEMENT

29.    On February 15, 2025, the Franchise Agreement automatically renewed, and during the renewed term of the Franchise Agreement, Defendant filed for bankruptcy.

30.    During the pendency of the bankruptcy, Defendant rejected the Franchise Agreement.

31.    Rejection of an executory contract in bankruptcy constitutes a material breach of the Franchise Agreement.

## DEFENDANT'S COMPETING BUSINESS

32.    After rejection of the Franchise Agreement, Defendant began operating a competing transmission repair business under the name "Ability Transmission."

33.    The competing business operates from the same location as the former Mr. Transmission franchised business.

6

34.     On February 19, 2026, Franchisor sent Defendant a notice of termination, formally acknowledging the termination of the Franchise Agreement and demanding compliance with the post-termination obligations including, but not limited to, the obligation to cease using the Marks and System and to abide by the post-termination noncompete provision.

35.     Despite termination of the Franchise Agreement, Defendant has continued to reference the Marks in online marketing and digital media, as shown below:



abilitytransmissiontx.com

Suggested Sites    Imported    Accounts    First Midwest Bank |...    Sign in to Business...    Login - XFINITY

**Ability Transmission**

HOME    ABOUT    TRANSMISSION SERVICES ⌄    FAQ    TESTIMONIALS    CONTACT

CALL US TODAY

APPLY FOR FINANCING

This video is private

Many transmission repair shops in the Houston area just give you a price on labor. The final cost of transmission repairs is a total mystery until it comes time to pick the vehicle up. At Mr.Transmission, we eliminate the unknown and give you the full price upfront for your transmission repair in Houston. No hidden charges! No surprises! And no gimmicks!

---

**Ability Transmission**

HOME    ABOUT    TRANSMISSION SERVICES ⌄    FAQ    TESTIMONIALS    CONTACT

CALL US TODAY

APPLY FOR FINANCING

## Here's What Customers Are Saying About Ability Transmission

With over 38 years in business at our Houston location, you can trust the transmission technicians at Ability Transmission to easily handle any problem your vehicle may have. Trust your car to us, and we'll get it back to you, running like new. Don't take our word for it. Read what a few of our happy customers have to say about our services. Call us today for more details!



"Took my Nissan Altima there for a rebuild, had other shops charging me over 3,000 and they got it done for one $1,100 and yet has not failed on me and runs like new."

**- MOISES C.**



"I was referred to Mr. Transmission by Firestone who after they change my oil I had a squeaking noise coming from my truck that they thought was the transmission. Josh Weiss at Mr. Transmission was nice and was the person that helped me. They have seen me right away and did a great job. It wasn't my transmission but they are a very honest and good business to work with. Word of mouth goes a long way and I will be sure to share my good experience with Mr. Transmission."

36.     In fact, Defendant still has a Mr. Transmission video up on his website:

8



## Call Now! 713-455-1780

**Houston Transmission Repair**

**Upfront Pricing**

# $1,660.00
# Transmission Rebuild

Includes Master Overhaul Kit(steel components not included).
*plus fluids and taxes

ɪny transmission repair shops in the Houston area just give ɪ a price on labor. The final cost of transmission repairs is a ɔtal mystery until it comes time to pick the vehicle up. At ʰ.Transmission, we eliminate the unknown and give you the ll price upfront for your transmission repair in Houston. No hidden charges! No surprises! And no gimmicks!.



37. On February 25, 2026, Plaintiffs sent a follow-up correspondence to Defendant indicating that he has yet to take down the infringing use of the Plaintiffs' Mark on his website demanding him to immediately take it down.

38. Despite repeated demands, the Defendant continues to use the Marks in violation of the Franchise Agreement and the law.

9

39. Notably, in fact, the photograph below was taken outside of the Infringing Business on March 15, 2026:



40. Defendant's continued use of Plaintiff's Marks creates a likelihood of consumer confusion regarding the source, sponsorship, or affiliation of Defendant's business.

41.     Defendant has also continued to utilize the System which is confidential and proprietary information owned by the Plaintiffs and which the Defendant was only allowed to use in connection with his operation of the Mr. Transmission franchise.

## COUNT I
### Trademark Infringement  - 15 U.S.C. § 1114

42.     Plaintiffs incorporate the foregoing averments in paragraphs 1 through 41 as if fully set forth herein.

43.     Plaintiffs own valid and enforceable federal trademark registrations and rights to use the Marks.

44.     Defendant has used and continues to use the Marks in commerce without Plaintiffs' authorization.

45.     Defendant's use of Plaintiffs' Marks is likely to cause confusion among consumers regarding the source or affiliation of Defendant's services.

46.     Defendant's actions constitute trademark infringement in violation of 15 U.S.C. §1114.

47.     Defendant's infringement of the Marks has been willful, deliberate, and undertaken in bad faith, with the intent to trade upon the reputation and goodwill associated with Plaintiffs' Marks and to mislead consumers into believing that Defendant's business remains affiliated with Plaintiffs' franchise system.

48.     Defendant's continued unauthorized use of the Marks has caused and will continue to cause Plaintiffs irreparable harm, including loss of control over their reputation, loss of goodwill associated with the Marks, and consumer confusion as to the source, sponsorship, or affiliation of Defendant's business.

49.     Plaintiffs have no adequate remedy at law because Plaintiffs cannot be adequately compensated for the deprivation and dilution of the consumer recognition and goodwill built up under the Mark as a result of Defendant's conduct.

50.     Plaintiffs' immediate and irreparable harm will continue unless Defendant is enjoined from continuing to use the Marks or any other mark confusingly similar to the Marks

## COUNT II
### False Designation of Origin / Unfair Competition – 15 U.S.C. § 1125(a)

51.     Plaintiffs incorporate the foregoing averments in paragraphs 1 through 41 as if fully set forth herein.

52.     Defendant has utilized and benefited from the Marks by continuing to use the Marks after the expiration of the Franchise Agreement in connection with the Infringing Business.

53.     Defendant willfully intended to trade on the reputation of and cause dilution of the Marks by continuing to utilize the Marks in connection with the Infringing Business.

54.     Defendant is guilty of trademark infringement and unfair competition pursuant to the Lanham Act, 15 U.S.C. §1051, et seq. Defendant's use of the Marks constitutes a false designation of origin and is likely to cause confusion, mistake or deception as to being affiliated, connected or associated with Plaintiffs in violation of 15 U.S.C. §1125(a). Defendant's conduct is also a violation of the common law of unfair competition and is an unfair trade practice under common law.

55.     Defendant's continued operation using the Marks has caused and will cause Plaintiffs and Plaintiffs' other licensees irreparable injury in that customers are being deceived by Defendant as a result of its illegal claims to ownership of the Marks; business will be diverted from Plaintiffs; the Marks will be diluted; and Plaintiffs will lose profits, revenues, and donations which, because of Defendant's conduct, cannot be readily calculated.

12

56.     Plaintiffs have no adequate remedy at law because Plaintiffs cannot be adequately compensated for the deprivation and dilution of the consumer recognition and goodwill built up under the Mark as a result of Defendant's conduct.

57.     Plaintiffs' immediate and irreparable harm will continue unless Defendant is enjoined from continuing to use the Marks or any other mark confusingly similar to the Marks.

## COUNT III
### Misappropriation of Trade Secrets – 18 U.S.C. § 1836

58.     Plaintiffs incorporate the foregoing averments in paragraphs 1 through 41 as if fully set forth herein.

59.     Plaintiffs possess trade secrets including proprietary business methods, marketing systems, customer service protocols, and operational standards as part of its System.

60.     Defendant obtained access to these trade secrets through the Franchise Agreement.

61.     Defendant has used and continues to use Plaintiffs' trade secrets in connection with his competing business despite his obligation under the Franchise Agreement to cease using the Plaintiffs' Marks upon termination.

62.     Defendant's misappropriation of Plaintiffs' trade secrets was willful, intentional, and malicious within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §1836(b)(3)(C), entitling Plaintiffs to exemplary damages and an award of attorneys' fees.

## COUNT IV
### Breach of Contract – Non-Compete

63.     Plaintiffs incorporate the foregoing averments in paragraphs 1 through 41 as if fully set forth herein.

64.     The Franchise Agreement constitutes a valid and enforceable contract, which prevented Defendant from opening a competing transmission business within twenty-five (25)

13

miles from the Franchise Business for two (2) years following the Franchise Agreement. Ex. A at § 23.

65. Defendant agreed to comply with the covenant not to compete contained in the Franchise Agreement.

66. Defendant's operation of Ability Transmission at the same location as the Franchised Business within two years of the termination of the Franchise Agreement violates the non-competition provisions of the Franchise Agreement.

67. Defendant's conduct constitutes a material breach of the Franchise Agreement.

68. Defendant's breach of the covenant not to compete has caused and will continue to cause Plaintiffs immediate and irreparable harm, including loss of goodwill, damage to Plaintiffs' franchise system, and unfair competition with Plaintiffs' authorized franchisees.

69. Plaintiffs have no adequate remedy at law for these injuries, and injunctive relief is therefore necessary to enforce the non-competition provisions of the Franchise Agreement.

**COUNT V**
**Breach of Contract – Confidential Information**

70. Plaintiffs incorporate the foregoing averments in paragraphs 1 through 41 as if fully set forth herein.

71. The Franchise Agreement required Defendant to maintain the confidentiality of Plaintiffs' proprietary information and the System.

72. Defendant has used Plaintiffs' confidential information and the System in connection with the competing business and in material default of the Franchise Agreement.

73. Defendant's continued use of Plaintiffs' confidential information and proprietary System threatens Plaintiffs with immediate and irreparable harm that cannot be adequately remedied by monetary damages alone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant as follows:

i.     A preliminary and permanent injunction enjoining Defendant and his agents, employees and any person acting in concert with him from using the Marks or any colorable imitation in any manner whatsoever;

ii.     A preliminary and permanent injunction enjoining Defendant and his agents, employees and any person acting in concert with him from continuing to operate the Infringing Business;

iii.     An accounting of and judgment for the profits to which Plaintiffs may be entitled;

iv.     Treble damages pursuant to 15 U.S.C. § 1117;

v.     An order requiring Defendant to deliver and/or destroy all virtual and physical labels, signs, prints, packages, wrappers, receptacles and advertisements in its possession bearing the word and/or symbol that is the subject of the trademark or trade name violation or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same pursuant to 15 U.S.C. §1118;

vi.     Punitive Damages;

vii.     Attorneys' fees pursuant to Section 26 of the Franchise Agreement, 18 U.S.C. § 1836 and 15 U.S.C. § 1117(a)

viii.     Costs of this action; and

ix.     Such further relief as this Court deems just and proper

**FISHER ZUCKER LLC**

Dated: March 19, 2026          <u>/s/ Matthew D. Wilson</u>

Matthew D. Wilson
Fisher Zucker LLC
21 South 21st Street
Philadelphia, PA 19103
(215) 825-3100
Attorneys for Plaintiffs